Good morning, Your Honors. Mark Hanson. I'm court-appointed counsel for defendant-appellant Leyda Ada. There are several issues that were briefed, and I'd like to reserve, if I could myself, five minutes for rebuttal, but hopefully it won't take too long. If Your Honors don't have any specific questions about the briefing, I'd just like to highlight some of the issues that we saw. If it's helpful, I can tell you that I'm certainly more troubled by the enhancements. That seems to me to be, I don't know if troubled is the right verb, but that's the part that's most of interest to me, the cross-reference in particular. So the cross-reference, based on this, in respect to a criminal, in respect to a crime, is obviously, once you get past the threshold efficacy of the perjury conviction itself, is how did the acquitted conduct all come back, basically, through this cross-reference. I guess it's our argument that both for the efficacy of the perjury conviction and for this cross-reference, that this CJA Form 23 that happens basically post-arrest isn't a good mechanism for evaluating whether something's in respect to a crime, particularly in this case, where my client was arrested, she's under arrest, but she wasn't told. I mean, these are sealed indictments when she's arrested, so she wasn't told exactly what the charges were. And it's really just the form... Can I interrupt right there? Forgive me, but she was at home when she was arrested? She was at a shop that they, at that point, her... Okay, and there'd been a search of her home and she knew it, I think. They happened simultaneously, it's my understanding. So the FBI went to her house and to their shop, to the shop... So she wasn't present for the search of her home? She was not. Okay, so then we wind up in a conference room somewhere. That seems to be where the action picks up for what we have on our limited record, and her husband's there, and then he's taken away in handcuffs, and to say it's a stressful situation is probably an understatement. But she immediately requests... She says she has a lawyer and requests counsel. She identifies a lawyer, which is odd to me. I believe she just identified her existing counsel. Both she and her husband had a local attorney there as counsel. Right, and mentions that the house is in her name, so sort of the flavor is sort of that they had talked to counsel, but requested counsel and they interview her right away for this form. So she knows what the form's for because she's requested a lawyer, right? No, so she said she had counsel, but then pretrial services did... The financial services affidavit... Walked her through it right there, right? No. So she's basically arrested by the FBI, and she's taken to the Marshal Service, and there's a holding cell. So because they were dealing with Melvin, her husband, she was at a conference table in handcuffs or in custody and being watched by an FBI agent. This is when the FBI agent testifies that she had blurted out that nothing's in my name or the name of my name. But then when she's taken... Then after Melvin's taken out, she's put in... It's an interview room, so it's a screen. It's the same room where if I went to meet a client that's there pre-initial appearance. There's a screen, and she's in a locked room by herself, and you go in a separate door. Okay, but setting that aside, she's still sitting looking at this form. She's just requested a lawyer, and they're walking her through it, I think. Is that wrong? That's wrong, Your Honor, because she's not looking at the form. So the probation officer, pre-trial services officer, which is probation... Okay, but is it walking through... I agree. The record says the probation officer filling it out, but is talking with her to get the answers to put in the form, yes? That's correct. Okay, and then they ask this question about do you have cash on hand, and that's what... You challenge that as to whether or not that's ambiguous? We do. Fundamentally ambiguous, Your Honor. Cash on hand, what does that mean? Okay, and so she says she doesn't have any money, but the government contends she did, and that she had a bunch of cash in her underwear drawer, maybe cash in the bank. I'm trying to get... Admittedly, I'm going through this quickly, but I'm trying to get to my question. I'm sorry. That's okay. So then we come to the in respect to, that she said something that wasn't true. She said she didn't have any money. Right. And she at least knows she's being asked the question in the context of requesting a lawyer that the government's going to pay for, or are you contesting that? No, I believe that the pretrial services officer did tell her this part. Remember, there's two interviews going on almost simultaneously, and that's one of the problems that we have with the evidence itself, but she wasn't basically provided much, if any, notice other than these are questions that we're asking you. She wasn't told that she had the right to counsel. She wasn't even told what pretrial services is supposed to tell her, is that these questions that you're responding to cannot be used against you. Okay, but she'd asked for a lawyer. No, she just identified a lawyer. She didn't ask for a lawyer. She says, my lawyer is Brian Sears-Nicholas. That's all she said. She literally didn't question her based on that, right? No. The procedure's now changed because of this case, I think, because we had it changed, but now anybody that goes through pretrial services in this situation then gets either a CJA-appointed counsel or their own counsel to come in before pretrial services starts the interview process. Is it your contention that she didn't realize she was being asked these questions, whether she was looking at the piece of paper or not, and I didn't mean to suggest that she was, but she's being led through a series of questions, and is it your contention that she did not know that that was because she had asked for counsel? I say yes. She didn't. It was not because she had asked for counsel. It is a standard process, and the pretrial services officer testified in trial that she does this with everybody. So in a vacuum, your client was asked, do you have any cash on hand? No, it was read, well, essentially, yeah. She started out, she basically had two forms. I have a one-page form and I have a nine-page form. I'm going to start with the one-page form, and this is to see if you qualify for court-appointed counsel. There is a non-sequitur there, but this is the mentality of the pretrial services officer. Okay, but the district court found it wasn't ambiguous, right? That's correct, Your Honor. So I guess then the question is, do we owe any level of deference to the district court's determination that the questions were not ambiguous? Arguably, it's a factual finding. Obviously, the standard for this has not been determined, but when you're talking about fundamental ambiguity, it's a question of law that's reviewed. But that goes to your argument about setting aside the conviction, right? Yes. I was asking questions about the enhancement, about whether she perjured herself in respect to the underlying embezzlement. So we would argue that the standard is abuse of discretion. I think the government agrees with that when she's applying that cross-reference under 2J1. Now we're halfway through your argument. I'm just getting to my question now. Sorry. That's okay. My question is, I think that our case law said, what does in respect to mean? It's not in furtherance of, it's in respect to. And that could be construed to mean about. Was her perjury, was her false answer about the embezzlement? And I think we have defined that to mean, did she have reason to know that testing concerned the criminal offense? The district court thought she had reason to know that it concerned the criminal offense because she was trying to basically hide the ill-gotten gains. I think that's the closest the court could come to saying that the falsehood was about the criminal offense. Is that right? That's an accurate statement. Well, okay, why is that wrong? That's what I would like you to answer. Because it presumes, I think, a lot of, I don't think the facts played out that way. Well, the district court had some historical facts that it went through, and the application to the guidelines to those facts, I think, are reviewed for clear error and for abuse of discretion. So here, although the jury acquitted Leda on the money laundering charges, the government's evidence was more than sufficient to support, the argument would be the district court's findings that Leda was aware of her husband Melvin's fraudulent scheme, and that she knowingly benefited from the scheme. I mean, it went on for a very long time, and there are bank accounts involved, and so I guess I'm, I think the prosecution would argue that you have to show that those findings are clearly erroneous, or that the district court abused its discretion in applying the cross-reference. So, apparently the district court just didn't think that your client knew nothing about this. I think there was discussion, other family members being shocked, but this went on for like seven years. My understanding is the prosecution didn't ask for the cross-reference, but said, if you want to do it, that's fine, but we're not asking for it, right? Now they're defending it here, but. Defending it now, but in the briefing after the court, at the first sentencing hearing said, I want to know whether the cross-reference applies. Then the government came back and said, well, the reason we didn't put that in our original sentencing memo is because we think there are questions with the standard, and there could be questions with the facts in this case. Well, there aren't a lot of cases on this. There are no cases with Roberto CJ23. I'm still waiting for the answer to my question, if I could. I think perhaps the question is, she's sitting there, she's been essentially confined, arrested, and all that. How could she not know that it concerned a criminal offense? Because it was a year, first of all, it was a year after her husband had left. The investigation of the FBI wasn't with them. They hadn't been called in front of a grand jury. There wasn't an ongoing investigation. They knew . . . When you're sitting in a confined room with officers, she's talking about her lawyer. She knows something is afoot that's not a civil charge. They've tossed her house, too, right? She may or may not have done that. Let me ask you, do you have any cash on hand? That's my summary. That's my shorthand of the question. Do you have any cash on hand? She is under arrest, and she's requested a lawyer. Do you have any cash on hand? She says no. Again, my summary, my paraphrase. I think your argument has to be that she didn't know or that the judge was wrong in finding that that answer was in respect to the criminal offense. That's correct. Okay. What's your best shot at that, please? Well, one, it would turn the CJ23 into basically . . . Any false statement when you're trying to get counsel, and she was not. And to correct your Honor again, she didn't ask for counsel. She said she had counsel, but she was asked these questions anyway, and she wasn't really told what the purpose was. Okay, so we'll have to hear from opposing counsel about that, because they definitely make the representation that she both said . . . you know, identified a lawyer by name and requested counsel. So I'll check on the record on that, but . . . But . . . Press on. It was one of a series of questions, and that's one of the problems is we don't really know what her response was, because the pretrial services officer filled this out and then conducted another more extensive question, questionnaire, and didn't go back and supplement any of the responses. So we're not exactly sure what she said, but that goes . . . So she's in the interview room. Not to interrupt, but I mean, she's in the interview room. She's under arrest. She's asked some questions. How can she not know that it's concerning a criminal offense when you're asked these questions? I mean, or put another way, why was it an abuse of discretion for the district court to conclude that it was concerning a criminal offense? Well, I mean, it's . . . one, because it had been a year since any of the money laundering activities would have played out that actually were part of the conspiracy and part of the substantive money laundering . . . So what did she think her answer was about? You're not contesting the falsehood. I mean, she said she didn't have money. If you just assume that we're going to . . . we don't find that persuasive, just speaking for myself. Do you have cash on hand? I don't find that ambiguous. Okay. So she said no, basically. Is it your contention it was about . . . that answer was about what? Are you distinguishing between the criminal offense being the embezzlement and her falsehood would have been about an effort to get a lawyer? Yes. About . . . okay, but you just spent five minutes trying to tell me she didn't ask for a lawyer. That's part of my confusion. Well, she didn't ask for a lawyer, but the question itself can't be . . . I mean, I don't think in the U.S. v. Colston case, I think they used the context of the question to sort of limit the question that the defendant in that case was arguing would include everything. In this case, she basically said, I'm going through this form to see if you qualify for a court-appointed counsel, even though she wasn't . . . she had said that she had an attorney. She said, fine, and she was asked, do you have any cash on hand? I would argue, as we did, that that's ambiguous, but when she responded to that, she wasn't . . . and I don't think the evidence is there, and sufficiency of the evidence-wise, we don't think that the court went through the proper analysis, but to say that she was saying, no, I don't have any cash on hand to try to cover up her husband's embezzlement or the conspiracy to commit money laundering that had occurred, you know, had completed a year before that. Okay. I've got a question I need to . . . if I'm not stepping on Judge Christin. No, no. Okay. Thank you. I want to clear this up before you sit down, because it's . . . one of the enhancements that's in question here is 2J1.3b2, and my understanding, there seems to be some indication that that was not imposed, so do we have to worry about that? If . . . well, in 2 . . . yes, Your Honor, but . . . All right. You have a hard time answering directly, okay, that I . . . this one seems pretty easy. Okay. So, did the court impose that enhancement? No, because of the cross-reference, but if the . . . if something happens with that cross-reference, either it's not applied or the . . . we argue the loss is too high, right? So, if . . . All right. So, if we affirmed on everything else, we don't have to worry about that because it wasn't imposed? Correct, Your Honor. All right. But if we agree with you on the cross-reference, then it would go back and it would still be at play? No. Or, if you agree that there wasn't sufficient evidence to find that she should be attributed 1 . . . more than $1.5 million, something less, that it would be remanded for resentency, but that specific offense characteristic . . . Okay, but at this . . . if this sentence, if we affirm otherwise, that was not imposed? That's correct, Your Honor. Okay. That's all I . . . I just had to clear that up. Okay. Thank you, Counsel. We'll give you some time for rebuttal. Thank you for your patience. Good morning. May it please the Court. Garth Backey on behalf of the United States. I'll just jump to the cross-reference question. He was acquitted of the other charges. Yes, Your Honor. Money laundering, substance in the account of money laundering and conspiracy to commit money laundering. Obviously, we must begin with the language of 2J1.3c, which says, if the offense involved perjury in respect to a criminal offense.  It does not say, if the offense involved perjury in respect to a criminal offense. It doesn't say arising out of. No, but we've said it means had reason to know the testimony, in this case testimony, but the case time, concerned the criminal offense. So, it wasn't Counsel's argument is that anything they ask after they've arrested you, presumably, in one sense, concerns the criminal offense. That's why you're there, that's why you're in jail, that's why you've gotten handcuffed. So, where's the limiting principle there? Well, this case is so factually unique, it is almost limited by the fact that it's a      It's a case of a perjury. It's a case of a perjury. in itself. Okay. It's a case of a perjury. This is, if I may just continue, that this court has already recognized that the guidelines do not require that the defendant have committed perjury with respect to their own conduct . It's just a criminal offense. You know, sometimes the guidelines we use offense of conviction. It doesn't even say that here. So I don't think it has to be in respect to what she came in on the indictment on. If she's covering for another crime that's not… Okay, but you still have to show that her lie, that's my word, about not having cash on hand related then maybe to her husband's embezzlement or somebody else's embezzlement. But anything they're asking her, I mean, to follow up on Chief Judge Thomas' question, arguably anything they ask you once you're under arrest in an interrogation room is about a criminal offense. So where do we limit that? As I said, I think this will limit itself. This was the culmination of a one-year cover-up. From July 5th, 2011 to the date of her arrest, she and her husband engaged in a continued cover-up from draining accounts, going on food stamps, going on Medicaid, opening up bogus corporate accounts, which contained documents that said they were not paid, even though they were both the CEO's. I think that's all in the record. And I'm not trying to argue with… I just don't understand why it matters for purposes of this enhancement. Because she, the CJA… So she is with the FBI. She says, I don't want to answer any questions. I have an attorney, Brian Stairs Nicholas. They shut it down. Within minutes, she is brought to be interviewed by the pretrial services officer, who says to her, you don't have to fill this out. This is only if you want court-appointed counsel. I don't know why she proceeded and asked for court-appointed counsel, because Brian Stairs Nicholas represented her in two separate hearings afterwards. Well, we know that. So it's just such a specific question. We have to figure out whether the falsehood she told, which was in response to this question, which I pretty well signaled I don't find ambiguous. Do you have cash on hand? She said no. My paraphrase, to be sure, but she said no. And we have to decide whether that was in respect to this criminal offense. And so there was a case we cited. It was out of circuit. The perjury has to be enmeshed with the criminal conduct. And if you are going to limit it to what she was charged for, then it is. Because we said, and this is what we argued before the district court, if you think this is another step of the cover-up to essentially the woe is me defense, I could never have stolen all this money because I'm poor, I'm on food stamps, I can't afford my lawyer. If you find that's another step of the cover-up, which we argued, then it would be in respect to a criminal offense. Okay. Thank you. You've answered my question. Thank you, Your Honor. Okay. So are you – so I think counsel for Ms. Otta said that, all right, if it's otherwise deferred, the enhancement under 2J1.3b2 was not imposed. Is that correct? Yes, Your Honor. All right. But if we find problems otherwise, which I don't know what we're going to do because we haven't obviously talked about the case, but we're just hearing argument, then that would go back and the court could consider that. Exactly right. All right. Were you trial counsel? I was, Your Honor. You were? Yes. Okay. All right. So I guess we'll see you again on the next case. Yes, Your Honor. Okay. So we'll wait for that. I was not trial counsel on that one. I didn't think so. All right. So tell me your best argument for any findings that the district court made or what deference the district court is because you did not seek the cross-reference. You said you could do it if, but we're not seeking it. So there's sort of a paucity of case law on this and so what is the best support for that in terms of what we have in the record here? Were there any findings or what's the situation here or what deference is of the district court? She was obviously acquitted on the money laundering, right? Yes, Your Honor. But I don't think that ever affects the standard review. I mean, the guidelines contemplate acquitted conduct being considered in the ninth-degree case law, contemplates . . . Can you like . . . Sometimes you like talk in your beard here and then you talk really fast and you're bared. Sorry, Your Honor. The guidelines contemplate the consideration of acquitted conduct. The Ninth Circuit contemplates the consideration of acquitted conduct. We . . . I would say abusive discretion is the ethical standard here and the judge did make a very detailed and long finding as to why she found, for example, the cross-reference. Importantly, she found that Leda Adda was complicit in the health care fraud and the money laundering. Now, there's really two sets of money laundering. There's the money laundering that occurred during the health care fraud. Then there's the money laundering when they essentially get exposed. And that begins on July 5, 2011. We're like, uh-oh, we're in trouble. Let's drain our bank account. Let's pretend to be poor. So, but Judge Manglonia found, despite the jury's verdict and she sat through that trial, which lasted 11 days, Leda Adda essentially . . . I think you did the health care fraud. I think you were involved in the health care fraud. I think you were involved in the money laundering as well as the cover-up afterwards. Well, did . . . okay, so the scheme lasted for seven years and there . . . did the district court say that she reaped some of the benefits from the scheme? Yes, Your Honor. Which were? What was mentioned? Well, we admitted evidence showing that she had given numerous loans to her family members. She flew to the island of Chuuk seven times. She had Louis Vuitton purses found in her house, coach wallets, and et cetera. We could also show that her debit card was used to make . . . Who was the gambler? Both. But she was. We had $19,000 in checks that she wrote to a video poker parlor. Okay, on the $1.5 million that was . . . Okay, that's reviewed for what standard? That would be clear, Your Honor, because the issue is knowledge or foreseeability. Well, it's . . . so what's the best . . . I think you acknowledged that that's sort of an estimate, right? So how do we . . . The figure is not disputed. No one disputes that Melvin Atta stole $1.796 million. Okay, but that's not 1.5, so how do we get to 1.5? That's the amount, and it's whether she knew or was it reasonably foreseeable either under one point . . . either as relevant conduct or on 2B1.1. And the judge said, again, because she was complicit, and she said, you did benefit from this money. You helped open the account that got this all started. You helped clear accounts afterwards. It's reasonably foreseeable that you knew about it. And again, you were spending the money as it was being stolen. Well, does anything . . . but there's not like there's a list that adds up to 1.5, right? 1.5 is off of 1.7, which there is a list for. Yes. Yes, Your Honor. So is that reviewed then for abuse of discretion? I don't think it's been raised or challenged. The figure has not been challenged, at least the government would argue. Well, he's not challenging the 1.5 restitution? Restitution? No, Your Honor. He's charging the 2B1.1 finding that she is liable for the 1.5, over $1.5 million, not because the figure wasn't over $1.5 million, because she wasn't, according to the appellant, she wasn't involved or she didn't know. And so that's why it's clear error, because the court said, yes, you did know about that money. So what you're saying, he's not challenging the amount, he's just challenging whether she knew? Exactly. Turning back to the cross-reference for a minute, it's a little . . . the situation is a little bit odd because she basically indicates that she's got a lawyer, and the questioning stops. But then the questioning starts again under a different guise, and she's charged with perjury, and the cross-reference is applied based on the questioning that occurred after she asserted her right to a lawyer. And then the further complication is by saying, I lack funds to signing the form and asking for CJA, presumably under your theory, she's asserting her right to counsel. So all that means, it seems a little harsh to first charge her with perjury on the form and then use it as a cross-reference. And also, I guess my overriding concern is, because we paint with a broader brush than just looking at this case, it really calls into question what to do in these circumstances when pretrial probation comes in with a separate form and starts questioning a potential criminal defendant after she's asserted her right to counsel. I understand that, Your Honor. I understand that there are some issues that could be very concerning to this court going forward, what the proper process is. And these are things that could have been litigated at the district court, which never were. They could have been litigated in this appeal, but they never were. But in this case, again, I need to return to the point that the extremely unique factual circumstances of this case. Why did she identify a lawyer, shut down questioning, then go to be interviewed by pretrial services, who told her, you don't have to answer this unless you want court reporting counsel, and she says, I do. She had to sign the form. She did have to sign the form. They went over it. At some point they gave her the form because she had to sign it. That's why it's perjury as opposed to just a lie. No, she didn't. We would submit everything in that form, save for two answers were false or intentionally misleading. Her dependents were correct, and I'd say the value of her car. But everything else, whether she was employed, I know she was acquitted of that, but she was arrested at work in her office, of which she was the CEO. But she submitted some documents at some point in time that said that she wasn't paid. Her father did, to open a bank account. Counsel, is there any case that we have, I mean, under this circumstance where she's asserted her right to a lawyer and then she goes forward, and I appreciate that she's told she doesn't have to answer the questions, but she does if she wants to get a lawyer, and after all the lawyer that she's talked with is clearly going to be conflicted out, he's not going to represent both of these people. I am concerned about it. This would apply every time. Your Honor. The way you're fashioning this, it would apply every single time. For any question on that form, as long as she signs it, because your view of the universe is that every question they ask her once she's in custody is about a criminal offense. Your Honor, I don't know if the court has to reach that question in this case. But I'm asking you, am I missing something? I don't know. I haven't given much thought because I think that this case . . . We have to give it a lot of thought. That's what we're paid for. Well, there is no case out there even remotely on point, and I submit there will never be a case remotely on point. Why do you find these facts so unique? They seem pretty vanilla to me. Well, the fact that she, in her mind, and the evidence would suggest that she thought the CJA Form 23 was another opportunity to claim that she's impoverished and could never have had an opportunity to steal this money or take part in it. Remember, she applied for food stamps and Medicaid, drained her bank accounts, and she gets to the CJA Form. And so she shows up in court. I'm indigent. Well, it's a little bit like the . . . You took a shot at the queen and missed on the money laundering, and then this is like where you lie to the FBI agent. It's like how the people that . . . it's the catch-all. I would dispute that. I mean, I've never seen something like this before either. It was, in our opinion, the reason the charge stayed is because it was seamless. It was from beginning to end. Was she told before she . . . Here's what I'm envisioning, and this part of the record matters to me at least, and it's pretty fuzzy. When she sat down, I think it's pretty clear she had requested counsel. That's my read of the record. And then another person, a probation officer, was walking her through this form, asking the questions, opposing counsel's representative. They were opposite each other across the table, so she couldn't read the form. But at some point, it's turned around and she's allowed or required to sign it. Was she told at the outset that those questions were under author? She was going to have to sign it at the end? Yes, she was informed numerous times that this is under penalty. At the outset? You have to be truthful. Do we have a recording of that? No, Your Honor. What do we have? The probation officer's testimony? Yes, Your Honor. This is one of those lawyer bulletproof glass. Yeah, I understand. I think. So that tells me she couldn't see it as they were going through it, but she could hear them. But at some point, then, it's turned around and she signed it, right? Yeah, but the probation officer's testimony, she went over it very carefully. She filled it in. This was a 10-minute process to go through 10 questions. She testified it took her 10 minutes. And then she reviewed it with her one more time and had her sign. I get the perjury charge. I mean, she did sign under penalty of perjury. But the cross-reference is enhancing that after she's already invoked right to counsel. That's really the gist of it. This is not about the conviction as far as I'm concerned. It's the enhancement. Okay. Yes, Your Honor. And these are concerns, I guess, that have been alluded to in the arguments of counsel. They didn't cite any cases saying what the consequences are. I mean, he has brought up involuntary. He didn't cite any either. Well, I don't think I trust it. That makes any difference. But he says in Moran, he alludes to Moran. He alludes to involuntariness. No citation in any case. No telling the court what the legal consequence is or what we should do in this circumstance. So, we'd say it was waived at the very least. But again, to return to my point, this is such a unique case, I believe it will limit itself going forward. Hard to write as a unique case. Excuse me, Your Honor. Hard to write as a unique case, I think. It doesn't sound that unique. No, I mean, we're writing, as I said before, we're writing on a broader, painting on a broader canvas here, and we're setting rights and responsibilities going forward for a number of parties. And if you just take the plain facts of interview, invocation of counsel, going, filling out a CJA form, applying the cross-reference, it's a little bit tough to say, yeah, it's different now because there was an overarching conspiracy that we have to imply, which is not, that's just your theory. I mean, it may be true, but she didn't say, I was continuing the conspiracy when I was doing this. If I may suggest some language, such as, whatever the limits may be, we need not decide within this opinion because. I mean, I think that would limit it sufficiently. Well, we can do that, but I'm just saying I'm not sure that there's a, it's more difficult. I understand, Your Honor. Okay. Thank you, Counsel. Thank you. We'll give you three minutes for rebuttal. Thank you, Your Honor. To the limit of the cross-reference, and I think it was stated by the government in its response to the court's request for a briefing on the application of the cross-reference itself was the substantial effect language of U.S. v. Leon Rages, and where they found that the effect of the perjury in respect to a criminal offense was insignificant. And so the significance of the effect here, particularly in the context of this Form CJA-23, which is routine in all these cases, and in light of the facts of this case, I would argue that could be a limiting factor itself. But I agree with you, Judge Christin, that it would apply. Basically, you'd be able to use this cross-reference in any case. Well, in this case, it almost flies in the face of reason, though, that your client didn't know anything about any of this. I mean, for over that period of time, that kind of money coming, a married couple. I can understand people outside the family. They don't know. And apparently, that's what the judge thought. Hey, this went on for seven years. It was $1.7 million, and you guys gambled. You had things that clearly were not consistent with your lifestyle and all of that. And she was involved in bank accounts, and she had – I wish I had $4,000 in my underwear drawer, to be perfectly honest. There were a lot of things there that the court just didn't find – found that she was clearly wrapped up in this and that essentially she got pretty lucky that she didn't get convicted of the money laundering. And then she got this catch-all. I think it was the government that got lucky with the catch-all. I think that the – Well, it's hard to know. If they hadn't charged it, would they have gotten a higher or nothing or – you don't know. But obviously, there's a lot of evidence, circumstantial evidence in the trial that would seem to indicate that she – and apparently that the court felt that she knew what was going on. Well, certainly the way the court and the government want to look at the facts, that's the case. But in reality, what you're saying is that because she is the wife, she must have known. And that was our argument. And the judge is like, oh, but every – that one person, and they called 30 people to testify? Our analysis is a much narrower scope than whether she knew about all this money that was being embezzled over a period of – we just have to decide whether her statement that she didn't have cash on hand was – if we decide that's untrue and that the question's not ambiguous, we just have to decide whether or not really that was about a criminal offense. In respect to – In respect to. In a significant way, or with a significant effect. That's it. So it's a much narrower inquiry. I agree, Your Honor. I was just responding to Judge Callahan's sort of adoption of the court's hyperbole about the facts of the case. I think it played out at trial. Do we have to decide per earlier case law that the defendant had reason to know that the question really went to the embezzlement as opposed to going to her qualification for counsel? I think that's a difficult question. I have to say yeah, because, I mean, how can you accidentally say – lie in respect to a criminal offense? I think you would have to know that your answers had to do with a particular criminal offense, although the government disagrees and says, well, it could be any criminal offense. She had to know that – I mean, in the context that she was saying it, to the extent the context is important for this, she would have to know that it was other than for purposes of getting court-appointed counsel. And the warnings, she was given warnings by the pretrial services officer, but not until after she had finished the CJA 23 form. Then she went through and she read her, said, now I'm going to go through the bail interview, and you have the right to counsel, you have the right to remain silent. But the only thing she said, the pretrial services officer told my client, and this is what the pretrial services officer testified to, is that it's important to tell the truth. And the document wasn't spun around so she could sign it because there was a screen in a separate room and there's a locked marshal's door that she has to go through security to get back in there. So she did that interview, and then she changed to the pretrial services hat and did the bail interview. And then after 30 minutes of questioning, starting out with that one-page form, then she went around and she said, okay, now sign this and sign this and sign this. And didn't incorporate anything back in that she may have been told. So as far as, you know, objectively my client could have thought was that it was all part of one big interview and everything she said was going to be properly incorporated by the probation officer into the forms that she filled out, which was about 10 pages at that point, not one CJA form 23 that the government then cherry-picked to prosecute her for perjury. One quick unrelated question. I just want to make sure I understand your argument on the attribution of $1.5 million. Your argument is that she didn't know about it and you're not challenging the specific calculations underlying it. Is that right? That's correct, Your Honor. It was more than 1.5. That's the 2B1.1 threshold for the amount of loss table. We said that even under the facts as the judge laid out in the sentencing and the government argued for, you know, opening a bank account seven years, you know, seven years before all this came to light by anybody. And the government liked to argue, well, she had journals, undated journals, that showed that she was going to transfer this much and that much. And if you took all of that and you added all of that up, that showed that she had some knowledge of this. And there was testimony at trial that she had separate funds, that she had gotten some of her father's land compensation money with the rest of her family. But even if you added all that up, it came to about $113,500, not $1.7 some million. The judge just decided to attribute all of the loss equally to her and say that she should have known of the extent of the seven-year fraud that her husband perpetrated on the government that nobody knew about. And our argument is that the only reason that the judge was saying that was because she was the wife. There was no other objective fact to show that she should have known. And we don't even know that Melvin himself knew the extent of his fraud, because they were gambling. He would steal it and he would gamble it. He'd steal it and gamble it. He'd spend it on strip clubs and fancy cars that he would give to his friends. But she was a stay-at-home mom. And there weren't any facts to suggest that anybody knew, much less her, the extent of the fraud that he had perpetrated. Thank you, counsel. Thank you both for your arguments today. The case is just arguably submitted for decision.
judges: Thomas, Callahan, Christen